Allen S. FOX, Libellant, Appellant,

v.

THE S.S. MOREMACWIND, her boats, tackle, etc., in rem, Respondent, and Moore-McCormack Lines, Incorporated, as owners, operators, etc., in personam, Respondent and Third-Party Petitioner, and Waterfront Ship Service Corporation, Third-Party Respondent, Appellees.

No. 8198.

United States Court of Appeals Fourth Circuit.

Argued Nov. 18, 1960.

Decided Dec. 27, 1960.

Sidney H. Kelsey, Norfolk, Va., for appellant.

Harry E. McCoy, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on the brief) for appellee Moore-McCormack Lines, Inc.

Roy L. Sykes, Norfolk, Va. (Jett, Sykes & Coupland, Norfolk, Va., on the brief) for appellee Waterfront Ship Service Corp.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This appeal from the District Court for the Eastern District of Virginia is by Allen S. Fox, who had filed a libel for personal injuries against the vessel, SS Moremacwind. The District Court found that Fox's loss of three fingers while doing work as a carpenter employed by Waterfront Ship Service Corporation on respondent's vessel was not a result of any unseaworthy condition, and dismissed the libel.

The vessel was about to take on a load of coal, and the Waterfront Ship Service Corporation was engaged by the owners to construct protective covers to fit over the metal covers of the deep-tanks, over which the coal was to be stowed. The carpenters were to build wooden frames around the coaming of the ship's deep-tanks. They were then to fit covers made of rough dunnage over the tank covers and nail them to the frames. In this way the metal covers would be protected from damage when the coal later was to be removed from the vessel by grab-buckets or clam-shells. Another purpose of constructing and installing these wooden covers was to provide additional protection against the seepage of coal dust into the tanks.

On September 10, 1957, Fox was brought aboard the SS Moremacwind for the purpose of trimming off excess lengths of rough dunnage which extended beyond the frame to which they had been nailed. To accomplish the job Fox's employer furnished him an electrically powered hand saw. It has a circular blade, the upper half of which is shielded by a stationary metal covering. Over the lower portion of the blade is a retractable shield which rotates in a circular motion, and is designed to protect the operator from the spinning blade when the saw is not actually cutting wood. Earlier on the morning of Fox's injury, a small metal stop-bolt or guard-bolt on the saw had broken off. The function of this bolt was to keep the lower blade guard from closing completely. Thus, with the bolt in place, a small opening between the lower and upper guard would remain and a portion of the blade exposed. The operator could begin a cut without manually retracting the lower guard to expose the cutting edge of the blade. As the saw is pushed forward the guard automatically retracts under pressure of the saw against the wood.

Fox started his job of trimming the excess lengths of dunnage. As he proceeded, the saw encountered a nail in the

line of cut and Fox withdrew the saw. After the nail had been removed Fox resumed cutting. He was wearing gloves and, as he retracted the lower guard with his left hand, his glove was caught by the spinning blade, amputating three fingers.

In the trial before the judge, sitting without a jury, Fox maintained that the absence of the stop-bolt forced him manually to retract the blade and that accordingly the absence of the bolt constituted an unseaworthy condition which caused his injury. The District Judge, however, after hearing all the testimony and witnessing a demonstration of the saw's operation conducted by a witness called by Fox, found as a fact that the absence of the stop-bolt was unrelated to the injury. The witness who performed the demonstration testified that in resuming a cut, as opposed to starting a new one, it was necessary manually to retract the lower guard even with the stop-bolt in perfect condition and in place. This piece of evidence, accepted by the court, is crucial to its finding, and, if not erroneously interpreted, justifies the court's decision.

At the bar of this court Fox insists, as he did below, that he was not resuming the interrupted cut but was starting a new one when he was injured. According to him, had the stop-bolt been in place it would not have become necessary to retract the lower guard manually when starting a new cut, and the absence of the stop-bolt was thus a cause of his injury. The District Judge had before him not only Fox's version but also that of other witnesses who testified that in the circumstances Fox would naturally resume the old cut and not begin a new one. It has been persuasively argued that there would have been no point in Fox stopping and waiting for a nail to be removed, if his intention was not then to resume the old cut. If he wished to start a new cut there was no need to wait, as he did, while the nail was being removed. If he really meant to start a new cut at the edge of the wooden cover under con-struction, and the absence of the bolt had necessitated manual retraction of the guard, then the defect would have presented a case of unseaworthiness of the equipment, and if that contributed to causing the injury he would have been entitled to recover, irrespective of negligence. On the other hand, if Fox's plan was merely to resume the interrupted cut several feet from the edge, it was necessary for him in any event to retract the guard by hand, whether or not the bolt was in perfect or defective condition, or altogether missing. In that event, the condition of the bolt was immaterial.

An unseaworthy condition must be a cause of injury for a right of action to result. In the view the District Court adopted the defective bolt played no part in the accident. It is as though the plaintiff had shown the existence at the time of the accident of a defective wench, ladder or other equipment which performed no role in producing his injury. The District Judge did not, as the plaintiff argues, deny recovery for an injury shown to have been caused by an unseaworthy condition, upon the mere speculation that such an injury could also have occurred in some other way. Here the plaintiff's account is disbelieved and the express finding, which is well supported, is made by the trier of fact that the unseaworthy condition had nothing to do with causing the injury.

The conflict in the evidence was one of fact for the District Judge to resolve. After carefully reading the record, observing the demonstration of the saw's operation, which was repeated in our presence, we conclude that the District Judge could reasonably find, as he did, that at the time of the accident Fox was resuming the old cut, where manual retraction of the guard would have been necessary in any event. In the circumstances the court could find that the absence of the stop-bolt was not a contributing factor to the injury. Certainly we cannot say that the finding of the District Court is clearly erroneous.

Affirmed.